THOMAS, Acting Chief Justice.
Claimant’s wrist was injured in an accident arising out of and during the course of her employment with Allure Shoe Corporation 6 January 1960. She was sent by the employer to a medical clinic where it was recorded * that the wrist had been sprained and that the employee would be able to resume light work immediately. It was indicated that the employee would need further treatment a few times but the exact number of them was not stated. After visits to the doctor on the day of the accident and the day afterward the claimant did not return for eighteen months.
The deputy commissioner in his order observed that there was no medical testimony about the nature of the treatment and that the only testimony in this respect was that of the claimant herself. She said that in mid-1961 she was still experiencing discomfort and returned to the clinic where a physician directed her to soak her arm in warm water, to massage it and to take aspirin. The deputy examined the arm, considered the employee’s statements and concluded that disability amounted to IS per cent. He decided that she had reached maximum improvement 9 January 1960, three days after the accident, yet continued with the “type of treatment recommended” by the doctor. The deputy thought this procedure was “in the nature of palliative care sufficient and adequate to toll the running of the statute of limitations.” The claim for compensation had not been filed until 12 March 1962, two years and two months after the supposed injury. Secs. 440.13(3) (b), 440.19(1), Florida Statutes, F.S.A.
*705 The statutes aside, the deputy ordered compensation for permanent partial disability of the arm and the payment of claimant’s attorney’s fee.
The Full Commission was in complete and unanimous disagreement with the deputy-
Decision of the controversy hinges on the nature of the care that the claimant gave her arm. The employee contends it was “treatment” as that term was intended under the cited sections, although her counsel in the brief termed it “medical advice”; the deputy held it was such treatment; the employer insists it was not; the Full Commission agreed with the latter. Since the two-year period within which a claim must be filed is to be computed, in this case, from “the date of the last remedial treatment furnished by the employer” under either of the sections cited, the very nature of the care given by the claimant to her arm is decisive of the question whether or not the statute of limitations operated to defeat any claim she may have had. We have italicized certain language of the section, the importance of which will become apparent as we proceed.
It should be noted now that although the employer originally sent the claimant to the clinic, the employer did not authorize the later visit and was not even aware of it. This consultation was arranged purely on claimant’s initiative.
We agree with the Commission that no remedial treatment was furnished by the employer to the employee during the period of two years that ended 7 January 1962.
In the first place we do not construe the requirement of “remedial treatment” in the statute to be satisfied by the attention the claimant gave her arm. In the first paragraph of Sec. 440.13 is the definition of the obligation of the employer to the employee in event of injury. It is provided there that the remedial treatment and care shall be under the direction and supervision of a qualified physician, nurse or hospital. This to us means that the advice given shall be by one trained professionally to offer it. We do not feel that under the facts in this case instructions to soak an arm in hot water and to swallow aspirin, which can be obtained in vast quantities in innumerable stores without restriction or prescription, constitutes a process that can be dignified as such medical treatment as was contemplated by the legislature when Chapter 440 was enacted. The extent of the procedure recommended by the doctor during claimant’s second visit, as it is established by the sole testimony may be comprehended by the facts that no charge for the service was made and her drug bill, presumably for aspirin, amounted to $2.65.
Moreover, it does not appear that the suggestions of the physician, made at the later consultation, during the two-year limitation period, could logically be considered to have been “treatment furnished by the employer” as the law requires. To get to such a conclusion it would have to be reasoned that when the employer arranged for the original visit to the clinic there was not only a manifestation that treatment was then being furnished by it but that this element could be projected to the later visit of which the employer was ignorant hence satisfying the condition that the statute would be tolled upon the furnishing of treatment by the employer. That route is one we cannot follow.
We think the Full Commission was correct when it reversed the order of the deputy commissioner and dismissed the claim. Because of our conviction relative to the bases of the claim, there is no occasion to discuss the other aspects dealing with the amount of compensation and so on.
The writ of certiorari is discharged.
O’CONNELL and HOBSON (Ret.), JJ., WIGGINGTON, District Judge, and HEWITT, Circuit Judge, concur.